FILED
CLERK
11/23/2026 11:09 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

For Online Publication Only

ANGEL MATERNIDAD ULLOA MONTOYA,

Petitioner,

-against-

PAMELA BONDI, in her official capacity as U.S. Attorney General; KRISTI NOEM, in her official capacity as U.S. Secretary of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; RAUL MALDONADO, in his official capacity as Warden of the Brooklyn Metropolitan Detention Center; TODD LYONS, in his official capacity as Acting ICE Field Office Director; JUDITH ALMODOVAR, in her official capacity as Acting Field Office Director of the New York Office of U.S. Immigration and Customs Enforcement,

Respondents.
----------------------------------------------------------------------X

**MEMORANDUM & ORDER**
25-CV-06363 (JMA)

**AZRACK, United States District Judge:**

Petitioner Angel Maternidad Ulloa Montoya ("Petitioner") filed a petition for a writ of habeas corpus challenging his immigration detention without an individualized custody determination or a bond hearing. This Court ordered his release, held his detention was unlawful, and granted the petition. Petitioner now moves for attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"). (See ECF No. 24.) For the reasons discussed below, the Court grants Petitioner's motion and awards Petitioner $8,540.35 in attorneys' fees and costs pursuant to the EAJA.

## I. BACKGROUND

Petitioner entered the United States in February 2024, when he was 17 years old. (ECF No. 1 ¶ 38.) On February 25, 2024, United States Customs and Border Protection arrested Petitioner near the Rio Grande Valley in Texas. (ECF No. 14-1 ¶ 4.) Because Petitioner qualified as an Unaccompanied Alien Child, see 8 U.S.C. § 1232, he was initially placed in the custody of

the Office of Refugee Resettlement and subsequently released to a verified family sponsor. (ECF No. 1 at 10–11, 13–14; ECF No. 14-1 ¶¶ 14–19.) On October 31, 2024, United States Immigration and Customs Enforcement ("ICE") served the Petitioner with a Notice to Appear, charging him as inadmissible and ordering him to appear before an immigration judge in New York. (ECF No. 1-3 at 6–8.) Petitioner attended each hearing as part of his removal proceedings.

On August 28, 2025, after leaving a regularly scheduled hearing, Petitioner was arrested by ICE agents and then transferred to the Metropolitan Detention Center in Brooklyn the following day, where he was detained without bond. (ECF No. 14-1 ¶ 27; ECF No. 1 ¶ 39.) Petitioner requested a bond redetermination hearing before an immigration judge, but the assigned Immigration Judge found that he lacked jurisdiction to review Petitioner's detention status.

On November 17, 2025, Petitioner initiated the instant action by filing a petition for a writ of habeas corpus, along with a motion for a temporary restraining order and a preliminary injunction. (ECF Nos. 1, 2.) Respondents opposed Petitioner's requested relief, maintaining that Petitioner was an alien "seeking admission" to the United States and therefore subject to mandatory detention pursuant to Section 235(b)(2)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1225(b)(2)(A). The Court issued an Order to Show Cause on November 18, 2025, and after receiving Respondents' opposition on November 24, ordered Petitioner's immediate release from custody on November 25, 2025.

On December 3, 2025, the Court ordered the parties to submit supplemental briefing addressing the impact on the petition, if any, of an order issued in Bautista v. Santacruz, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), which certified and granted relief to a nationwide class of "all noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the

Department of Homeland Security makes an initial custody determination." Id. at *9. After reviewing the parties' briefing, the Court granted Petitioner's petition on December 23, 2025, on the grounds that his detention without an individualized custody determination and without a bond hearing violated the INA and the Due Process Clause of the Fifth Amendment. (ECF No. 22.)

On March 23, 2026, Petitioner filed the instant motion for attorneys' fees under the EAJA. (ECF No. 24.) Petitioner requests fees for 88.5 hours of attorney time and 0.5 hours of paralegal time. For attorney time, he calculates a rate of $155.70 based on the $125 statutory rate adjusted to reflect a cost-of-living increase. (Id. at 20.) For paralegal time, he requests a rate of $45.00. For both rates, he seeks a twofold fee enhancement pursuant to 28 U.S.C. § 2412(d)(2)(A) based on what he characterizes as "'distinctive knowledge or specialized skill need for the litigation" that is not available at the statutory rate," including:

> highly specialized expertise at the intersection of federal habeas corpus litigation under 28 U.S.C. § 2241; complex and actively disputed detention authority under 8 U.S.C. §§ 1225 and 1226; constitutional due process challenges to prolonged and unlawful detention; statutory interpretation involving the TVPRA and UAC 'age-out' provisions; and emerging, multi-district class action implications arising from Maldonado Bautista, including analysis of class membership, preclusive effect, and nationwide declaratory relief.

(Id. at 20-21.) He also seeks $250.18 in costs associated with travel for in-person client meetings. (ECF No. 24-2 at 2.)

## II. DISCUSSION

The EAJA empowers federal courts to "award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The Second Circuit has established that "a habeas proceeding challenging immigration detentions constitutes a 'civil action' under the EAJA." Vacchio v. Ashcroft, 404

F.3d 663, 672 (2d Cir. 2005).

To award EAJA fees, the Court must conclude:

> (1) that the claimant [is] a 'prevailing party'; (2) that the Government's position was not 'substantially justified'; (3) that no 'special circumstances make an award unjust'; and, (4) pursuant to 28 U.S.C. § 2412(d)(1)(B), that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement.

Comm'r, INS v. Jean, 496 U.S. 154, 158 (1990).

Where a petitioner "demonstrate[s] that [he] is a prevailing party under the EAJA, the burden shifts to the government to demonstrate that its litigation position was 'substantially justified.'" Commodity Futures Trading Comm'n v. Dunn, 169 F.3d 785, 786 (2d Cir. 1999) (per curiam). The Government's position is substantially justified if it "had a reasonable basis in both law and fact." Vacchio, 404 F.3d at 674 (quoting Sotelo-Aquije v. Slattery, 62 F.3d 54, 57 (2d Cir. 1995)); see also Pierce v. Underwood, 487 U.S. 552, 565 (1988) (concluding that "substantially justified" means "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person"). Importantly, "the issue for EAJA purposes is not what the law is when the EAJA application is made, but rather whether the government was substantially justified in believing the law not to have foreclosed its position during the underlying litigation," id. at 787, and at the time of "the government's pre-litigation conduct," Senville v. Madison, 331 F. App'x 848, 850 (2d Cir. 2009). Thus, courts hold that reliance on "decisions [that] post-date the relevant events" is "misplaced." Galeas Miranda v. Maldonado, 2026 WL 2031685, at *3 (E.D.N.Y. July 14, 2026).

Furthermore, if a Court concludes attorneys' fees should be awarded, those fees must be "reasonable." See 28 U.S.C. § 2412(d)(2)(A) (defining "fees and other expenses" to include "reasonable attorney fees" below "$125 per hour unless the court determines that an increase in the cost of living or a special factor . . . justifies a higher fee"). Where "special factor[s]" are

present, the Court may find that a Petitioner is entitled to enhanced fees in excess of the statutory rate. Such factors are to be construed narrowly, requiring "'some distinctive knowledge or specialized skill needful for the litigation in question' . . . that would justify an enhanced award." Healey v. Leavitt, 485 F.3d 63 (2d Cir. 2007) (quoting Pierce, 487 U.S. at 572).

### A. Respondents' Position Was Not "Substantially Justified"

Respondents argue that their position that Section 1225(b)(2)(A) mandated the detention of Petitioner as an "applicant[] for admission" even though he was already present in the country was "substantially justified." (ECF No. 26 at 6.) They argue they were justified in believing the law did not foreclose their positions because "the only courts of appeals merits decisions to date on this issue," along with 10 district court decisions in this Circuit, comported with their position that Section 1225(b)(2) applied to aliens already present in the United States. (ECF No. 26 at 6, 8 (collecting cases).)[1]

Courts in this District, however, have been nearly univocal in finding Respondents' position here not substantially justified at the time of the government's pre-litigation conduct and the underlying litigation. See L.R.C. v. Maldonado, 2026 WL 946787, at *2 (E.D.N.Y. Apr. 7, 2026); Merlo Puerto v. Leeper, 834 F. Supp. 3d 337, 345 (E.D.N.Y. 2026); Shirokikh v. Maldonado, 2026 WL 3205985, at *4 (E.D.N.Y. Oct. 26, 2026), R.A.R.R., 2026 WL 3205968, at *4, and Galeas, 2026 WL 2031685, at *4; Pliego v. Noem, 835 F. Supp. 3d 374, 377 (E.D.N.Y.

[1] After the parties' briefing and the Court's grant of relief to Petitioner, the Court of Appeals for the Second Circuit held that Section 1225(b)(2)(A) did not mandate detention of those noncitizens who, like Petitioner, were already present in the United States. See Barbosa da Cunha v. Freden, 175 F.4th 61 (2d Cir. 2026).

2026).[2]

Respondents' arguments that their position was substantially justified are not persuasive. As an initial matter, Respondents are required to show both their pre-litigation conduct and litigation positions were substantially justified, as "only one threshold determination for the entire civil action is to be made." Senville v. Madison, 331 F. App'x 848, 850 (2d Cir. 2009); see also R.A.R.R. v. Judith Almodovar, 2026 WL 3205968, at *2 (E.D.N.Y. Oct. 26, 2026). Respondents, however, appear to limit their argument to the position taken in the "underlying litigation" alone. (ECF No. 26 at 8.) In light of the case law Respondents rely on, it is no wonder they seek to draw attention away from their pre-litigation conduct: The decisions they cite from district courts in this Circuit and two decisions from the Fifth and Eighth Circuit Courts of Appeals postdate their purported reliance on Section 1225(b)(2)(A) to detain Petitioner following his arrest on August 28, 2025. (Compare id. with ECF No. 14-1 ¶ 26-27 (declaration of Lukasz Kubicz describing Petitioner's detention purportedly pursuant to 8 U.S.C. § 1225(b)(2)).) To state the obvious, Respondents could not have been substantially justified in detaining Petitioner based on decisions that did not yet exist.

Much the same is true with respect to Respondents' position in the litigation. On November 24, 2025, Respondents submitted their response to the Court's November 19, 2025, order to show cause why a temporary restraining order should not issue. (See ECF No. 14.) None of the cited decisions from courts in this Circuit or the two courts of appeals decisions had been issued by the date of that response. The very earliest decisions—Chen v. Almodovar, 2025 WL

[2] In their opposition, Respondents cite just one instance in which EAJA fees were denied by a Court in this District on the ground that their position was substantially justified, which is not a decision but a short docket order. See Feb. 2, 2026 Order, Singh v. Maldonado, No. 26-cv-0292 (E.D.N.Y.). The Court there cited the "split within this circuit concerning the appropriate interpretation of 8 U.S.C. § 1225." Id. However, the Court did not address whether that split in authority had arisen at the time of the government's conduct in detaining the petitioner or of the underlying litigation.

3484855 (S.D.N.Y. Dec. 4, 2025) (Vyskocil, J.) and Candido v. Bondi, 2025 WL 3484932 (W.D.N.Y. Dec. 4) (Sinatra, J.)—were issued 10 days later.[3]

The decisions that did exist at the time Respondents were engaged in briefing directly undercut Respondents' position. Four decisions in this District held that Respondents' litigation position was legally incorrect. See J.U. v. Maldonado, 805 F. Supp. 3d 482, 494 (E.D.N.Y. 2025) (Merchant, J.) (issued Sept. 29, 2025); Artiga v. Genalo, 2025 WL 2829434, at *4–8 (E.D.N.Y. Oct. 5, 2025) (Merchant, J.); Hyppolite v. Noem, 808 F. Supp. 3d 474, 484–90 (E.D.N.Y. 2025) (Morrison, J.) (issued Oct. 6, 2025); Sarmiento Guerrero v. Noem, 815 F. Supp. 3d 181, 185–89 (E.D.N.Y. 2025) (Komitee, J.) (issued Nov. 18, 2025). Conversely, as of the time Respondents filed their response to the Court's November 19, 2025, order, not one court in this District had agreed that Respondents' position was correct. See R.A.R.R., 2026 WL 3205968, at *4 (noting no court in this District had held Section 1225(b)(2)(A) supported detention of a petitioner already in the United States as of December 11, 2025). The absence of authority favoring Respondents' position—coupled with a body of decisions uniformly rejecting it—weigh against finding that that position was substantially justified at the time Respondents advanced it. See Pierce, 487 U.S. at 569 (recognizing that "a string of losses can be indicative" of a litigation position not being "substantially justified").

Respondents suggest that their position was "substantially justified" because of "the absence of controlling authority foreclosing that position" when Petitioner was detained in August 2025. (ECF No. 26 at 8.) The only Court in this District to have considered this argument rejected it in Shirokikh, 2026 WL 3205985, at *4, R.A.R.R., 2026 WL 3205968, at *4, and Galeas, 2026

[3] Respondents also refer to other out-of-circuit district court decisions endorsing Respondents' position concerning Section 1225(b)(2). (ECF No. 26 at 6 n.3.) However, all of these decisions likewise postdate Respondent's arrest and detention; only a small fraction of them predate the Respondents' November 24, 2025 response to the Court's order to show cause. As discussed below, the decisions from prior to that date were far outnumbered by the hundreds of decisions in which courts around the country had rejected Respondents' position.

WL 2031685, at *4. This Court agrees with its analysis. As the Court in Shirokikh observed, "[f]or decades, DHS's longstanding interpretation ha[d] been that [Section] 1226[(a)], and not [Section] 1225[(b)(2)(A)], 'applies to [noncitizens] who have crossed the border between ports of entry and are shortly thereafter apprehended.'" Shirokikh, 2026 WL 3205985, at *4 (quoting Savane v. Francis, 801 F. Supp. 3d 483, 489 (S.D.N.Y. 2025) (emphasis added) (internal quotations omitted)); accord R.A.R.R., 2026 WL 3205968, at *4; Galeas, 2026 WL 2031685, at *4. "The Government cannot revisit its legal position for policy reasons without due care for its soundness as a matter of law, point to a lack of controlling authority foreclosing it due to its novelty, and then claim its position was 'substantially justified' because no authorities had yet found it unjustified." Shirokikh, 2026 WL 3205985, at *4 (internal quotation marks omitted). Respondents' position that Section 1225(b)(2)(A) permitted Petitioner's ongoing detention without an individualized custody determination or a bond was therefore not substantially justified.

**B. Reasonable Fees**

Petitioner seeks attorneys' fees and costs for the hours spent investigating facts, developing arguments, and successfully obtaining relief for Petitioner through litigation. (ECF No. 24 at 17-18.) He requests (1) fees for 88.5 hours of attorney time at a rate of $155.70 per hour, based on the statutory rate of $125 plus a cost-of-living adjustment; and (2) fees for 0.5 hours of paralegal time at a rate of $45 per hour. (Id. at 20.) He also seeks enhanced fees pursuant to 28 U.S.C. § 2412(d)(2)(A) for both attorney and paralegal time at a rate of two times the above rates on the grounds that litigating this case required "'distinctive knowledge or specialized skill needful for the litigation' that is not available at the statutory rate" because this case required counsel to litigate immigration and constitutional law issues under acute time constraints, given the demands of his emergency habeas application. (Id. at 9 (quoting Pierce, 487 U.S. at 572).) Finally, Petitioner seeks counsel's litigation expenses, including the costs of mileage driven for in-person client

meetings. (Id. at 21.) Respondents argue that, in the event the Court does not deny Petitioner's fee request in its entirety, the Court should apply a reduction to the number of hours by seventy-five percent and decline to enhance the fees pursuant to 28 U.S.C. § 2412(d)(2)(A). (ECF No. 26 at 12.) However, Respondents do not object to the unenhanced $155.70 rate for attorney time, (see id. at 12 n.6), or to Petitioner's calculation of expenses.

The Court has reviewed Petitioner's time sheet and list of costs. (See ECF No. 24-2.) The Court concludes that, while the substantive work reflected in the time entries was itself reasonable, the 88.5 hours billed between four attorneys was not. Petitioner's motion fails to "make a good faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). The time sheet reveals various entries that reflect work that was duplicative or not commensurate with the demands of the case. For example, four different attorneys variously performed more than 30 hours of research, drafting, and review in the course of preparing Petitioner's initial filings. The time sheet also reflects some clerical tasks, such as preparing a civil cover sheet, notwithstanding that purely clerical tasks may not be billed under the EAJA. See L.R.C., 2026 WL 946787, at *3. Additionally, certain tasks took Petitioner's counsel longer than should reasonably be expected, particularly in light of the numerous cases in which the central issues of this case had already been addressed. See Barco Mercado v. Francis, 811 F. Supp. 3d 487, 506-07 (S.D.N.Y. 2025) (collecting cases). For example, the attorney responsible for the lion's share of billed time spent 13 hours on research and drafting on the habeas petition alone and another 10 hours on a reply brief. (See ECF No. 24-2 at 1.)[4]

The Court finds that the hours of Petitioner's counsel should be reduced by a fixed

---

[4] This billing may be explained by the fact that this attorney had evidently only been admitted to the bar for approximately two months by the time this case commenced. See New York State Unified Court System, Attorney Directory, Registration No. 6254437, https://iapps.courts.state.ny.us/attorneyservices/ (last accessed Nov. 20, 2026) (showing admission date of September 10, 2025).

percentage to reach a reasonable number of hours. See Heng Chan v. Sung Yue Tung Corp., 2007 WL 1373118, at *5 (S.D.N.Y. May 8, 2007) ("In lieu of making minute adjustments to individual timekeeping entries, a court may make across-the-board percentage cuts in the number of hours claimed, 'as a practical means of trimming fat from a fee application.'") (quoting In re Agent Orange Prod. Liability Litig., 818 F.2d 226, 237 (2d Cir. 1987)); see also L.R.C., 2026 WL 946787, at *4 (applying a forty percent reduction where petitioner sought fees for excessive time entries including overlapping work and clerical tasks); K.B. v. Arteta, 2026 WL 1533794 (S.D.N.Y. June 1, 2026) (applying fifty percent reduction to account for excessive and duplicative billing); Safranek v. Wormuth, 2024 WL 5186599, at *7 (S.D.N.Y. Dec. 19, 2024) (collecting cases of reductions ranging from forty to eighty percent). The Court finds a reduction of forty percent appropriate to reach a reasonable number of hours for which fees are warranted. The Court finds the half hour of paralegal time and costs of mileage driven for in-person client meetings are reasonable and not subject to the forty-percent reduction.

Moreover, Petitioner has not demonstrated that any enhanced rate should apply. Petitioner argues that "the requested enhanced rate—at two times the statutory rate—is justified by the combination of the specialized and technical nature of the litigation; the constitutional stakes; the emergency posture; and the demonstrated success in securing immediate judicial relief." (ECF No. 24 at 21.) However, he does not cite any decisions from this Circuit where a petitioner challenging a purportedly mandatory detention under Section 1225(b)(2)(A) obtained enhanced fees due to the presence of "special factors," Pierce, 487 U.S. at 572, nor has the Court located any in its own research. Dozens of district courts around the country had addressed precisely this issue in hundreds of decisions by the time Petitioner filed his habeas petition and motion for a temporary restraining order on November 17, 2025. See Barco Mercado, 811 F. Supp. 3d at 506 (collecting 350 decisions between July 28, 2025 and November 21, 2025 in which courts rejected the

interpretation of Section 1225 advanced by Respondents here). The sheer quantity of these cases undercuts any suggestion that the case required "some distinctive knowledge or specialized skill" in this litigation. Pierce, 487 U.S. at 572.

The Court therefore finds Petitioner is entitled to fees and costs as follows: 53.1 hours of work by attorneys (i.e., 88.5 hours reduced by forty percent) at $155.70 per hour; 0.5 hours of work by a paralegal at $45.00 per hour; and $250.18 in costs. Accordingly, the Court awards $8,540.35 in total.

## III. CONCLUSION

For these reasons, Petitioner's Motion for Attorney's Fees and Costs Under the Equal Access to Justice Act is GRANTED. Petitioner is awarded $8,540.35 in attorney's fees and costs pursuant to the EAJA, 28 U.S.C. § 2412.

**SO ORDERED.**

Dated: November 23, 2026
Central Islip, New York

/s/ JMA
JOAN M. AZRACK